LYON
v.
TALLMADGE.

Bill dismissed without costs.

———◦※◦———

*August* 30th    LYON & BROCKWAY *against* TALLMADGE AND OTHERS.
and 31st.

Where a bill, on demurrer, is dismissed for want of equity, on the merits of
the case, as stated, leave to amend the bill will not be granted.

Amendments are granted only where there is some defect, as to parties, or
some omission, or mistake, of a fact or circumstance, connected with the
substance of the case, but not forming the substance itself, or where there
is some defect in the prayer for relief.

THE bill stated, that *Brockway* was imprisoned on a *ca.
sa.*, at the suit of *Tallmadge* and others; that *Lyon &
Brockway*, and the defendant, *Dewey*, as surety, gave to
*Richmond*, sheriff of the county, one of the defendants, a
bond for the liberties of the goal.    *Tallmadge & Co.*
brought an action against the sheriff, for the escape of the
defendant from the gaol liberties, which was tried in *June*,
1811, and the jury, under the direction of the judge, found
a verdict for the plaintiffs.    It appeared on the trial,
that *Brockway* returned within the liberties before suit
brought.    A case having been made and argued, before the
supreme court, judgment was given thereon, for the plaintiffs,
in *May*, 1812; and the case having been, by consent, turn-
ed into a special verdict, a writ of error was brought to the
court for the correction of errors.    *Lyon* and *Dewey* under-
took to defend the suit brought against the sheriff for the
escape, and employed counsel for that purpose; and, to in-
demnify the sheriff, confessed judgment on the bond which
had been given for the gaol liberties.    *Tallmadge* and
others offered to relinquish the judgment which they had

obtained against the sheriff, for the escape of *Brockway*, if
the sheriff would assign to them the judgment confessed to
him on the bond given for the gaol liberties. The sheriff
informed the plaintiffs and *Dewey*, the person who gave the
bond, of this proposal, and that he should accede to it, un-
less they would deposit the money, or give further
security for his indemnity, which they were unable to do;
and the sheriff, in *September*, 1813, against the wishes, and
without the assent, of the plaintiffs and *Dewey*, assigned the
judgment he had obtained against them on the said bond, to
*Tallmadge & Co.*, who thereupon released the judgment
they had obtained against the sheriff for the escape; and
which prevented the further prosecution of the writ of error,
brought on that judgment. That *T. Mumford*, as attorney
for *Tallmadge & Co.*, applied to *Lyon*, and representing
to him the danger of having the payment of the whole judg-
ment fall on him alone, if there should be any delay, obtain-
ed the consent of *Lyon*, that execution should immediately
issue on the judgment; and an execution was accordingly is-
sued against the plaintiffs and *Dewey*, and levied on their
real and personal estates, which were sold by the sheriff,
at auction, for an inconsiderable sum. The plaintiff, *Lyon*,
alleged, that *Dewey*, being displeased at *Lyon's* having con-
sented to the issuing the execution, had associated himself
with *Tallmadge* and others, the plaintiffs in the suit at law,
and had become hostile to the plaintiffs, and unwilling to do
any act favourable to the plaintiffs, or unfavourable to the
defendants, with whom he had made his peace. That the
proceedings in the suit had been stayed by an order of the
supreme court, but he, *Lyon*, apprehended that steps would
be speedily taken to dispose of his property under the exe-
cution; that the question as to the liability of the sheriff for
the escape, where the prisoner returned before suit brought,
had been brought before the court of errors, in a similar
case; and the judgment of the supreme court, in *Tillman* v.
*Lansing*, on which the court relied in giving judgment in

1814.

LYON
v.
TALLMADGE.

1814.          the suit of *Tallmadge and others* v. *Richmond*, had been
~~~~~~         reversed.
LYON
v.                     The bill, then, stated some agreement that the case of the
TALLMADGE.     plaintiffs should be brought within the last decision of the
               court of errors ; and there was a prayer for general relief,
               and for an injunction to stay all proceedings, by the defend-
               ants, on the judgments at law.

                       There was a general demurrer to the bill.


                       *Gold,* for the plaintiffs, cited 10 *Johns. Rep.* 509. 549.
               563.   *Pothier on Oblig. par.* 4. *c.* 3. *s.* 6.   *Hinde's Pr.*
               17.   *Barton's Suit in Equ.* 40.  2 *Atk.* 3. 13 *Vesey,* 114.
               2 *P. Wms.* 156.   3 *Atk.* 755.   *Dickens,* 533.   *Cooper's
               Eq. Pl.* 129. 139.*Mitford,* 4.   2 *Johns.   Cas.* 1.   2 *Powell
               on Cont.* 163, 164.   2 *Vesey,* 159.   3 *Vesey,* jun., 253.


                       *Riggs,* contra.


*August* 30th.     THE CHANCELLOR.   There is no equity appearing on
               the face of this bill.   The assignment of the judgment against
               *Lyon and Dewey,* to *Tallmadge and others,* and the release
               of the judgment against *Richmond,* are not charged as fraudu-
               lent acts, or done with a fraudulent intention.   The very
               state of the case repels any possible presumption of fraud.
               *Richmond* gave notice to the plaintiffs of the proposition
               made to him, and required of them the deposite of the sum,
               for which he stood charged, so as the more effectually to in-
               demnify him ; that was not done.   He then required ad-
               ditional security : that was not given ; and he told the plain-
               tiffs that he should make the assignment, if this effectual
               indemnity was not given.   There was no concealment or fraud
               in the case; but due notice was given of his intention.   Nor
               was it an unreasonable or oppressive demand on the part of
               *Richmond.*   He stood charged with the escape, by the
               judgment of the supreme court ; and *Lyon* and *Dewey* stood

behind him, and were bound to save him harmless.  He had
a right to be acquitted and discharged from all hazard, and
was not bound to permit a litigation to go on in his name, and
at his risk.   He had a right, at any time, to relieve himself
from the burthen of the risk, and of the litigation, by placing
the surety in his place, with all his means of defence.   It
was a right founded on a clear fundamental principle of
equity.   This he offered to do, and asked only a deposite of
the sum for which he stood charged ; or, if that could not be
done, that he should receive additional security.   There
is no hardship, or injustice, or fraud, imputed to *Richmond*,
either by any averment, or by the facts stated in the bill.  But
the bill admits, that, after all this was done, the plaintiff con-
sented that the assignees should issue execution on the judg-
ment confessed.   If ever the maxim applied, it does here,
that *volenti non fit injuria.*   With a knowledge of all the
facts, and as the last act in the history of the case, the plain-
tiff consents to have his, and his co-sureties' property charged
in execution, and sold for the payment of the debt.   This
consent is alleged to have been obtained upon the repre-
sentations of *Th. Mumford*, as counsel for the defendants ;
but *Mumford* is no party to this bill, and is not called upon to
answer to the truth of those representations, nor are these
representations even charged as being untrue, or made with
any fraudulent intention.

The bill, therefore, does not contain any *gravamen*, or
equity.   There is nothing that the defendants need to answer.
The bill must be dismissed with costs.

*Gold*, for the plaintiff, then moved for leave to amend the
bill.

*Riggs*, contra.

THE CHANCELLOR.   The motion for leave to amend the
bill, is not founded upon any specified omission or imperfec-

1814.

LYON

v.

TALLMADGE.

*August* 31st.

1814.

LYON
v.
TALLMADGE.

tion.   The demurrer was decided upon the merits, and on the ground that the bill contained no equity.   A general leave to amend would be the same as leave to make a new bill, and I think the indulgence of amendments is not to be carried so far.   If the bill be found defective in its prayer for relief, or in proper parties, or in the omission or mistake of some fact or circumstance connected with the substance of the case, but not forming the substance itself, the amendment is usually granted.   But the substance of the bill must contain ground for relief.   There must be equity in the case, when fully stated, and correctly applied to the proper parties, sufficient to warrant a decree.   Here, as I have already observed, the substance of the bill is defective.   The plaintiff gives a plain and candid statement of his case, and it cannot entitle him to relief, for the reasons assigned in pronouncing the decree.   In the absence of authority, I should deny this motion ; because, as far as the doctrine of amendments can be reduced to general rules, or principle, it is against it.   But there are cases which govern the present one.   In *Napier* v. *Effingham*, (2 *P. Wms.* 401.,) Lord Ch. *King* observed, that there was not any precedent, in this court, of an amendment to a bill in a part wherein it has been dismissed upon the merits ; and in a case before Lord *Talbot*, and which is cited by Mr. *Cox*, in his notes to *P. Williams*, (2 *P. Wms.* 300.,) the Chancellor observed, that, after a demurrer to the whole bill allowed, the bill was regularly out of court, and there was no instance of leave to amend it.

Motion denied, with costs.