# Conner & Wife *v.* Smith.

*Bill in Equity for Account and Redemption, by Purchasers from Mortgagor, against Purchasers at Sale under Mortgage.*

1. *Amendment of bill; what allowable.*—Where the original bill, filed by assignees of the equity of redemption, against the mortgagee and purchasers from him after a sale under the mortgage, seeking an account and redemption, claims credits in reduction of the mortgage debt, on account of cross demands accruing to the mortgagor, whether by way of recoupment or set-off, before the sale under the mortgage, and by him assigned to the complainants; an amendment is allowable, specifying the particulars of these counter claims, and showing how and when they accrued to the mortgagor, and when the complainants acquired them.

2. *Set-off and recoupment against mortgage debt.*—A claim for damages against the mortgagee, on account of his illegal seizure and conversion of personal property which was not advanced by him to the mortga-

[Conner & Wife v. Smith.]

gor under the agreement between them, is not matter of recoupment growing out of their contractual relations, but is available as a set-off (Code, § 2678), under a bill for an account and redemption, either to the mortgagor himself, or to an assignee who has acquired the equity of redemption, though he acquired such claim after the law-day.

3. *Statute of limitations against set-off or cross demand.*—The statute which declares that the statute of limitations does not bar a set-off when it was a legal subsisting demand at the time the plaintiff's cause of action accrued (Code, § 2682), is available in equity against an attempted foreclosure of a mortgage, whether by bill, or by sale under the power; and it may be asserted by cross-bill in a suit for foreclosure, or by bill for redemption and account after an invalid sale under the power.

4. *Same.*—A claim for damages resulting to the mortgagor, because his right of election to become the purchaser of certain mules, advanced to him conditionally by the mortgagee, was defeated by the illegal act of the latter in taking possession of them, is matter of recoupment rather than of set-off; and the statute of limitations can not be pleaded against it, when asserted in a bill for an account and redemption under the mortgage.

APPEAL from the Chancery Court of Madison.

Heard before the Hon. S. K. McSPADDEN.

The original bill in this case was filed on the 17th February, 1877, by Thomas U. Conner and his wife, who was a daughter of William H. Moore, jointly with the other children of said Moore, against Elon G. Smith, R. H. Herstein, M. Bernstein, and others; and sought to redeem certain property, particularly a block of stores in Huntsville, which had been conveyed by said Moore to his children, by deed dated September 11th, 1866, in payment of an admitted indebtedness "to a large amount," as therein stated. In describing the property conveyed, and also in the *habendum* clause, the deed stated that it was "subject to debts due to Joseph C. Bradley and E. G. Smith." The debt due to Smith was secured by a deed of trust on the property, which was dated May 10th, 1866, and by which the property was conveyed to F. P. Ward as trustee, with power of sale if the debt was not paid on or before March 16th, 1867. The property was sold by the trustee, under the power contained in the deed, Smith himself becoming the purchaser; and he afterwards sold and conveyed the store-houses in Huntsville to Herstein and Bernstein, two of the defendants to the bill.

The bill prayed an account of the debt due to Smith, charging fraud and oppression on his part, and knowledge by Herstein and Bernstein, at the time of their respective purchases, of the true state of the account; and sought to redeem on payment of the balance due, if any.

The consideration of the debt from Moore to Smith, as shown by the recitals of the deed of trust, was the price or

[Conner & Wife v. Smith.]

value of mules, agricultural implements, &c., furnished by
Smith to enable Moore to cultivate a large plantation in
Mississippi during the year 1866, and money advanced
from time to time to buy provisions, pay laborers, &c., all
together aggregating about $15,000. The deed of trust,
after setting out this agreement, recited that Smith had
bought, and had delivered to Moore, 49 mules, 55 plows, two
wagons, &c., of the aggregate value of $7,600, had advanced
in money about $3,399.94, and agrees to advance from time
to time, during the year, the further sum of $4,000.06. It
was stipulated in the deed, that Moore should have the mules
"cared for and kept in good order, and the agricultural im-
plements kept in good repair;" that he should "have the
right, at his election, to be made on or before December 15th,
1866, to purchase of said Smith the said mules and agricul-
tural implements, at the prime cost of all of them, with
twenty-five per-cent. addition thereto, to be paid on or before
said 15th December;" that in the event of his purchase and
payment, he should not be accountable for the use of the
mules and agricultural implements, nor for any loss or dam-
age resulting from his want of care in using and preserving
them; and that if Moore failed to exercise this right of elec-
tion, and to make payment as stipulated, then Smith should
have the right, at his election, to be made by December 25th
next, either to require Moore to take the property as pur-
chaser, at cost price, with legal interest added, or to deliver
up the property on the 3d January, 1867, pay a reasonable
compensation for their use, and estimated damages for inju-
ries resulting from use or neglect.

The allegations of the bill as to the state of accounts be-
tween the parties, and the grounds on which relief was
sought by the complainants, appear in the former reports of
the case (65 Ala. 371; 74 Ala. 115), and need not be repeated.
After the last reversal and remandment, the complainants
amended their bill by striking out all allegations and claim
for relief, except as to storehouses bought and held by
Herstein and Bernstein, On June 3d, 1885, the following
amendment was added:

"At the time of said foreclosure sale by said trustee, on
June 24th, 1867, complainants are informed and believe, and
upon such information and belief allege the fact to be, that
said Moore was owing nothing on account of the indebtedness
secured by said deed of trust, but that the same had been
discharged, satisfied, and paid in full, and no part of said

indebtedness remains unpaid. Said Moore had received from said Smith 49 mules, the cost of which was $132.50 each, aggregating $6,492.50; also, agricultural implements, the aggregate cost of which was, to-wit, $1,150; also, supplies to the amount of, to-wit, $2,500, and in money the sum of $1,200; the aggregate amount so received, in money and property, being $11,542. In violation of the terms of said contract evidenced by said deed of trust, said Smith, in November, 1886, took possession of said mules and agricultural implements, without the consent or permission of said Moore, and against his protest. Said mules had been well cared for and kept in good order, and said agricultural implements had been kept in good repair; and this was their condition when taken possession of by said Smith. When said mules were so taken by said Smith, they were worth, and would have brought, if sold for cash on said plantation, where they were kept, $175 each, which is $10 each in excess of prime cost and twenty-five per cent. added. The use and hire of said mules, for the year 1866, was not worth more than $1,000. By taking possession of said mules in November, 1866, said Smith deprived said Moore of his right to purchase said mules on the terms stipulated in said deed, and said Moore was thereby damaged at least $500; and complainants claim that the indebtedness secured by said deed of trust should be credited with said sum, and said Moore should be charged with not more than $1,000 on account of said mules, for their use. Said Smith, at the same time, also took possession of said agricultural implements, which, under the terms of said deed, said Moore had the right to purchase on the same terms as said mules, or to pay for the use of them; and said Moore was thereby deprived of this right of election. Complainants claim that the indebtedness secured by said deed of trust, on account of said agricultural implements, is the use of them during the year 1866, which is not more than $250; and they are informed that a good many of said agricultural implements were not used while in said Moore's possession, and were in as good condition when taken by said Smith as when received by said Moore.

"Complainants allege that said property is only chargeable, on account of the indebtedness secured by said deed of trust, with the following amounts, due Dec. 25th, 1866, to-wit: use of 49 mules, $1,000; use of agricultural implements, $250; money advanced, $1,200; supplies advanced,

$2,500,—all aggregating $4,950. Complainants claim that said indebtedness is subject to the following credits, as of December 25th, 1886, to-wit: damage sustained in difference of agreed price at which the mules were to be purchased by said Moore, and their actual value when taken by said Smith in violation of his contract, $500; proceeds of 25 bales of cotton raised on plantation in 1866, and received by said Smith, $2,500; three mules taken by said Smith with said 49 mules, which belonged to said Moore, and were sold and converted to his own use by said Smith, of value $175 each, $525; 200 barrels of corn of the crop grown on the place in 1866, which said Smith removed and converted to his own use, at $3.75 per barrel, $750,—all aggregating $4,275, and leaving a balance of $675, due on account of said indebtedness December 25th, 1866. Complainants claim that said Smith, by taking possession of said mules and agricultural implements in November, 1866, without the consent of said Moore, and against his protest, violated the terms of said deed of trust, and forfeited all right to any compensation for their use. Complainants claim this to be their legal rights, as the owners of said property under said Moore, and therefore allege that, when said sale was made by the trustee under the power conferred by said deed of trust, the indebtedness secured thereby had been satisfied and discharged in full; but, if they are mistaken in their legal rights in this particular, they here offer to pay said balance of $675, with interest, or such balance as the court may find actually due upon statement of the account. Complainants claim, also, that they are entitled to an account of the rents of said property," &c.

The amendment also added the following, as paragraph 9 of the bill: "Complainants further allege that said Herstein and Bernstein, and each of said purchasers from Smith, before they made their several purchases, were notified and informed in person of complainants' claims in and to said property, as herein and hereby set up and asserted, and were warned that, if they purchased said property from Smith, it would be subject to their rights and claims, as herein and hereby asserted; and they were further notified that said Moore owed Smith, on account of said indebtedness, but little, if anything, and that complainants would claim and assert their right to redeem said property from the sale under said deed of trust. And complainants further allege, that they did in fact offer to redeem said property, and to

[Conner & Wife v. Smith.]

pay the amount due on account of said indebtedness," both to said Smith after the sale by the trustee, and afterwards to the sub-purchasers from him; which offers were all refused, on the ground that complainants had no right to redeem.

Afterwards, on May 30th, 1887, another amendment to the bill was filed, as follows: "*Par.* 10. Said Wm. H. Moore, before the sale of said property under said deed of trust, transferred and assigned to these complainants, for a valuable consideration, all claims of set-off, recoupment, counter claims and damages, heretofore specifically stated and set forth in the amendment to the original bill of complaint, or those to him from said Smith; and these complainants have ever since been the owners of all of said claims, and so notified said Smith before the sale under said deed of trust; and said Herstein and Bernstein, before and after their purchase from Smith, were also notified and informed of the fact. Complainants allege that, before the sale under said deed of trust, they notified said trustee that they were the owners and holders of the equity of redemption of said Moore in said land, and were also the owners and holders, as above alleged, of all of said claims of said Moore against said Smith, and that they claimed nothing was due on account of the indebtedness secured by said deed of trust, but that the same had been satisfied and discharged in full."

To this last amendment the defendants demurred, assigning as grounds of demurrer, (1–2) that it was a departure from the original bill, and inconsistent with the former amendment numbered paragraph 9; (3–4) that the several claims and demands set up were barred by the statutes of limitations of three and six years; and (5–7) that the claims for the conversion of three mules, for the difference in value of the 49 mules taken by Smith, and for the alleged conversion of 200 barrels of corn, were not the subject of set-off in this case. The chancellor sustained the several demurrers, and the complainants assign his decree as error.

HUMES, WALKER, SHEFFEY & GORDON, for appellants. (1.) The amendment was made to meet the ruling of this court on the last appeal. It presented no new case, and ought to have been allowed.—*Steed v. McIntyre*, 68 Ala. 407; *Moore v. Alvis*, 54 Ala. 356. (2.) Each of the claims asserted by the amendment is available to the complainants, on statement of the account, in reduction of the secured debt.— *Washington v. Timberlake*, 74 Ala. 259; *Mayberry v,*

[Conner & Wife v. Smith.]

*Leech,* 58 Ala. 339; Waterman on Set-off, §§ 2, 3; *Railroad Co. v. Henlein,* 56 Ala. 368; Adams' Equity, 481. (3.) None of the counter claims is barred by the statute of limitations. Code, § 2682; *Riley v. Stallworth,* 56 Ala. 481; *Jeffries v. Castleman,* 75 Ala. 262.

R. C. BRICKELL, *contra.*—(1.) The conveyance to the complainants was made subject to the debts to Smith and Bradley, and conveyed only the equity of redemption. Their grantor was not bound to contribute to the payment or discharge of those debts, in exoneration of the lands, or of their equity of redemption.—1 Jones Mort., § 735; *Jumel v. Jumel,* 7 Paige, 591; *Brewer v. Staples,* 3 Sandf. Ch. 579; *Lovelace v. Junkins,* 62 Ala. 271; *Cherry v. Monro,* 2 Barb. Ch. 618; *Belmont v. Coman,* 22 N. Y. 438; Wilts. Mortgages, 224. (2.) For ten years, or more, the bill proceeded on the theory, contrary to the above authorities, that the complainants could claim the demands set up in reduction of the secured debt, though they belonged to their grantor, and accrued to him after the conveyance to them. The last amendment only asserts their ownership of these claims, and makes an entirely new case.—*King v. Avery,* 37 Ala. 169; *Ward v. Patton,* 75 Ala. 207. (3.) These claims are not the subject of recoupment. The claim for the three mules, and for the cotton and corn alleged to have been taken and converted by Smith, is for a mere tort, or trespass, and is not the matter of either recoupment or set-off.—*Walker v. McCoy,* 34 Ala. 659; *Bartlett v. Farrington,* 120 Mass. 284; *Pulliam v. Owen,* 25 Ala. 492; *Chambers v. Wright,* 52 Ala. 444; *Gafford v. Proskauer,* 59 Ala. 264; *Cram v. Dresser,* 2 Sandf. S. C. 120. The claim for damages, because Moore was deprived of a supposed right of election to purchase, is not available for any purpose, because it is not averred that he was able or willing to purchase. (4.) The claims, if of any merit whatever, were all barred by the statute of limitations before the bill was filed.—Wood on Limitations, 601; Waterman on Set-off, 112. (5.) There is no equity in the bill, original or amended. The sale by the trustee cut off the equity of redemption, though Smith himself became the purchaser, as effectually as a decree of foreclosure, leaving nothing in Moore, or his assignees, but the statutory right of redemption, which was barred in two years.—*Newburn v. Bass,* 82 Ala. 622; *Ezell v. Watson,* 83 Ala. 120; *Stocks v. Young,* 67 Ala. 341; 127 U. S. 532; 18 How. 143.

McCLELLAN, J.—This case has been twice before in this court, on appeals by the complainants and defendants, respectively, from decrees of the Chancery Court on demurrers to the bill.—*Smith v. Conner*, 65 Ala. 371; *Conner v. Smith*, 74 Ala. 115. On the last appeal, the averments of the bill as to the items of credit claimed by the complainants against the mortgage debt were held to be insufficient. A state of the testimony indicated by the bill and exhibits was also adverted to by this court, and held to render the bill multifarious, assuming that the facts indicated would be the proof in the case; and the decree below, sustaining demurrers and dismissing the bill in vacation, without allowing complainants an opportunity to amend—and on this ground solely—was held erroneous, and reversed, and the cause remanded.

In the further progress of the case, the bill was amended so as to obviate the objection for multifariousness, to specify the credits claimed originally by the grantor of the complainants, and to allege that these claims had been transferred and assigned by him to the complainants before the sale of the property sought to be redeemed, by the trustee under the mortgage. The amendments further aver, that complainants have ever since owned, and still own said claims, and that, before said sale, they notified the trustee of their ownership of the equity of redemption, and these items of credits, and their claim that nothing was due on account of the indebtedness secured by the instrument. The original bill was filed February 17, 1877. The amendments, since the case was last in this court, were filed on June 5, 1885, and July 30, 1887. To the last amendment it was demurred, that its averment in regard to the assignment by Wm. H. Moore—the grantor in the deed of trust, and of the complainants—of the claims he held against Smith to the complainants, was a departure from the case made by the original bill, and repugnant to paragraph 9 of the amendment of June 5, 1885, to which it purported to be an addition. And to both amendments it was demurred, that the claims and demands relied on to reduce or liquidate the debt secured by the deed of trust were barred by the statute of limitations, and that the claims were for unliquidated damages in such sort that they could not be the subject of set-off against the mortgage debt.

These several demurrers were sustained, and from the decree in that behalf this appeal is prosecuted,

[Conner & Wife v. Smith.]

In considering the first assignment of demurrer—that paragraph 4 of the last amendment "is a departure from the case made by the original bill and the several former amendments made thereto"—it is to be steadily borne in mind, that the claims therein referred to have been in the case, and relied on by the complainants, from the beginning. Not only so, but the opinions of this court, on the former appeals, have suggested no infirmity in these demands themselves, as foreshadowed in the earlier presentments of the case, for the purposes for which they were brought forward—*i. e.*, the reduction of the secured debt—but only that they were insufficiently stated. The complainants have always asserted the right to have these claims applied to the reduction of the charge upon their lands, or as payments *pro tanto* of the sum claimed by Smith. It is true, these counter-claims accrued to Moore after the conveyance by him of the equity of redemption to the complainants; but, as we read the bill and amendments, it has never been averred that they continued to be the property of Moore, or belonged to him at the time of the sale. On the contrary, the most that can be affirmed of the averments, prior to the last amendment, is, that they assert complainants' right to use the claims in reduction of the mortgage debt, without showing when, or by what means, or in what manner they acquired that right. The amendment of July, 1887, merely supplies this omission in pleading, and can not, in any just sense, be considered a departure from the case theretofore made, nor inconsistent with paragraph 9 of the amendment of June, 1885, as is contended in the second assignment of the demurrer. So considered, the amendment illustrates the rule laid down by Chancellor Kent, that "if a bill be found defective in its prayer for relief, or in proper parties, or in the omission or mistake of some fact or circumstance connected with the substance of the case, but not forming the substance itself, the amendment is usually granted."—*Lyon v. Talmage*, 1 Johns. Ch. 188. The "substance" here is the right to assert these claims against the debt. Whether that right was acquired in one or the other, or in both of two ways, is a fact not of itself forming the substance, but connected with it, and proper to be brought in by amendment. And certainly, under our very broad and liberal statute on the subject, which provides that amendments "must be allowed at any time before final decree, · · · · to meet any state of evidence which will authorize relief" ( Code, § 3449), and

[Conner & Wife v. Smith.]

the decisions of this court upon it, to the effect that any amendment which does not operate an entire change of parties, or the introduction of an entirely new cause of action, is proper to be allowed, the amendment of July, 1887, was not open to the objection urged against it in the first and second assignments of error.—*Steed v. McIntyre*, 68 Ala. 407; *Moore v. Alvis*, 54 Ala. 356.

The averments of the bill are insufficient to present the claims based on the conversion of certain mules—three in number—and certain corn and cotton by Smith, in the light of partial payments on the mortgage debt. As the facts are stated, it may be conceded that these claims are for damages resulting from a tort committed by Smith, and do not spring out of the contractual relations of the parties, so as to constitute matters of recoupment. But it by no means follows that these several items are not the proper subject of set-off against the mortgage indebtedness. It is quite an error to suppose that these demands necessarily sound in damages merely, within the language of our statute of set-off. It is true that an action of trespass *de bonis asportatis* would lie for their recovery, and it is also true such an action sounds in damages merely. But it is equally true, that trover would lie; and in that action the law furnishes a standard by which the damages may be admeasured, and the recovery regulated and limited.—*Curry v. Wilson*, 48 Ala. 638. Damages capable of being thus measured by a pecuniary standard, may be the subject of set-off at law under section 2678 of the Code.—*Cage v. Phillips*, 38 Ala. 382; *Sledge v. Swift*, 53 Ala. 520; *Collins v. Green*, 67 Ala. 211. And any demand which a mortgagor might set off against the secured debt, in a suit at law for its recovery, he may set off against the debt when it is sought to be enforced in equity by a bill to foreclose the mortgage.—*Gafford v. Proskauer*, 59 Ala. 264; *Knight v. Drane*, 77 Ala. 371. And a set-off may be relied on by the assignee of the equity of redemption, to reduce the charge on his land, although no personal judgment can be had against him.—Wiltsie Mort. Fore., pp. 452, 453, § 378. And it is no objection to a claim pleaded as a set-off that the mortgagor, or owner of the equity of redemption, acquired it after the law-day. It may be availed of, if acquired at any time before steps are taken on account of the default of payment, according to the terms of the instrument.—*Martin v. Mohr*, 56 Ala. 221.

On the case as now presented, therefore, our conclusion is,

[Conner & Wife v. Smith.]

that the claims asserted on account of the conversion of the mules and crops are available to the complainants by way of set-off against the mortgage debt, unless they are barred by the statute of limitations. Of course they are so barred, unless they come under the influence of section 2682 of the Code. That section provides, that "when a defendant pleads a set-off to the plaintiff's demand, to which the plaintiff replies the statute of limitations, the defendant is nevertheless entitled to his set-off, where it was a legal, subsisting demand at the time the right of action accrued to the plaintiff on the claim in suit." The statutes of limitations do not, by their own terms, apply to suits in equity, but are made to so apply by section 3419 of the Code, and prior thereto were applied by analogy in courts of chancery; and whether proceeding by analogy, or in obedience to the present statute, such courts give effect to the limitations obtaining in courts of law, and to the exceptions and qualifications thereto pertaining.—*Crocker v. Clement's Adm'r*, 23 Ala. 305; *Jones v. Jones*, 55 Ala. 532. Can the claims under consideration, as now presented, be brought within the exception above stated? They accrued to complainant's assignor December 25, 1866. The right to foreclose the deed of trust accrued, by its terms, on March 16, 1867. These items, therefore, were legal and subsisting demands, within the meaning and language of the exception, when the right of action, for breach of the condition of the deed of trust, accrued.—*Riley v. Stallworth*, 56 Ala. 481; *Jeffries v. Castleman*, 75 Ala. 262; *Washington v. Timberlake*, 74 Ala. 259; *Patrick v. Petty*, 83 Ala. 420.

It can not be denied that, had a bill been filed to foreclose the deed of trust, and sell the land to satisfy the debt secured by it, the complainants could have interposed in that suit the cross demands they had against the beneficiary in the deed, notwithstanding the bar of the statute had been perfected against them as independent causes of action, before the filing of the original bill. Shall this right be defeated, and the benefit of the exception to the statute of limitations be denied to the complainants, because, instead of proceeding by bill, the election was made to foreclose by a sale under the power, and the complainants forced to take the initiative in the courts? Do the mere facts that the instrument contains a power of sale, and that foreclosure is sought by the exercise of that power, cut off any substantive defense which the holder of the equity might otherwise have relied upon? Or, to put the same matter in another way, can the circum-

stance of a mere difference in the modes by which the mortgagor is put to his defense, defeat and operate to deny that defense? We think not. It is very true, that the case does not come precisely within the letter of the law; but is also true, that such a defense in equity can never come precisely within the letter of a statute applicable by its terms to actions at law. These demands, as now presented, fully illustrate the spirit and purpose of the exception quoted, and are in line with that principle of law applicable to cross demands, which regards only the balance remaining, after crediting the one with the other, as the debt due.— *Washington v. Timberlake,* 74 Ala. 264. Our opinion is, that in courts of chancery section 2682 of the Code may be relied on to exempt a cross demand from the operation of the statute of limitations, in all cases of attempted foreclosure of a mortgage, whether by bill or sale under power, and either by way of cross-bill when a decree of foreclosure is sought, or on a bill for redemption after an invalid sale under the power.

If the claim of $500 for damages, because Smith defeated Moore's right of election to purchase certain mules, is to be regarded as a set-off, it would be governed by the principles held above to be applicable to the items for conversion of property by Smith. That claim, however, is one of recoupment rather than set-off. It sprung out of the contract between the parties, and is based on the right that one party has to reduce the claim preferred against him by the other, under the contract, by the amount of damages he has sustained from a breach of that contract by that other.—Waterman on Set-off & Recoup., pp. 478 *et seq; Mayberry v. Leach,* 58 Ala. 339; *Washington v. Timberlake,* 74 Ala. 259. Such a claim runs with the contract, so to speak, and may, at least when it goes to the consideration, as it generally does in some sort, and as in the case here, be relied on without regard to the statute of limitations. So long as the contract, upon a breach of which the claim is predicated, subsists, and may be enforced, the claim itself may be pleaded in reduction, at least, of the demand on the contract; and this notwithstanding the matter of recoupment, independently considered, may be barred, not only when it is pleaded, but also when the right of action, against which it is asserted, accrued.—Wood on Limitations, pp. 602, 603, § 282.

It results from these views, that, in our opinion, the assignments of demurrer were not well taken, and each of them should have been overruled. Several other considera-

tions—some affecting the validity of these claims as now presented, and others going to the equity of the bill—have been urged upon our attention in argument, but the effort has been to confine the inquiry to the matters directly involved in the demurrers, and it is not intended to intimate any other opinion, not necessary to a determination of these matters.

Reversed and remanded.