WRIGHT, Presiding Judge.
Plaintiff appeals from judgment on counterclaim. We affirm.
Plaintiff, Tennessee Valley Cotton Oil Mill, a Corporation, brought suit on December 14, 1973, against defendant, Oakland Gin Co., a partnership, for the sum of $12,-832.50 due on a loan made to defendant on October 11, 1973. Motion to dismiss was filed by defendant within 30 days. There was no further activity in the case until defendant filed answer and counterclaim on May 17, 1976. The counterclaim alleged indebtedness of $15,075.07 owed by plaintiff to defendant arising from agreements entered between the parties in the years 1971 and 1972. Setoff against the claim of plaintiff was claimed by defendant.
To the counterclaim, plaintiff filed defense of general denial, statute of frauds and statute of limitations. Trial was had before the judge without a jury. Judgment was for defendant on the counterclaim in the sum of $75.07.
The issues presented are: (1) Is enforceability of the alleged oral contracts precluded by Title 7A, Sec. 2-201, Code of Alabama (1940) (Uniform Commercial Code)? (2) Is the counterclaim of defendant barred by Title 7A, Sec. 2-725, Code (UCC)?
The evidence presented tended to show the following: Plaintiff purchases cottonseed from producers and ginners. Such purchases are made in open market competition with others, primarily Buckeye Mills and Southern Cotton Oil Co. Each fall, prior to time for harvest and ginning of the cotton crop, defendant would discuss the prospects of the season with plaintiff. Plaintiff told defendant that if cottonseed were brought to it, it would pay the same price per ton as Southern and Buckeye were paying; and if additional benefits, called rebates, were paid by those companies, plaintiff would pay the same. Defendant, and other ginners, would then deliver the amount of seed which they desired to sell to plaintiff during the harvest season. Plaintiff would issue tickets showing the net tonnage received and the price to be paid. At the end of the season, sometimes March or April of the new year, the account would be balanced and settled. Sometime thereafter, when the oil mills had determined their financial position, some would often pay to their customers an additional sum per ton over and above the price at market. (Just why this was done is not clear from the evidence, but it was apparently a method of sharing the benefit of a profitable year with their customers and also an incentive to doing further business in the coming year.) Plaintiff told defendant at the beginning of the 1971 and 1972 season that it would in all respects meet the prices and rebates of its competition as it had in the past.
Defendants brought seed to plaintiff in 1971 and 1972. Plaintiff paid no rebate to defendant for either of those years. Defendant learned that Buckeye and plaintiff paid another ginner a rebate of $2.00 per ton for sales in 1971. Southern paid defendant $7.50 per ton rebate for sales of seed to it in 1972. Defendant requested payment from plaintiff of rebates for sales for the years 1971 and 1972 equivalent to that paid by Buckeye and Southern. Plaintiff refused.
In October 1973, defendant went to plaintiff and requested $15,000. Defendant did not state to plaintiff what the $15,000 was for. Plaintiff gave defendant a check for $15,000. Defendant made one delivery of seed in the season of 1973 and notified plaintiff in October that it would make no further deliveries and was claiming the $15,000 as payment for the unpaid rebates of 1971 and 1972 and the seed delivered in 1973. Plaintiff brought suit in December for payment of the $15,000, less credit for the seed delivered.
*155 Defendant admits that it secured the $15,000 from plaintiff with the intention that it would not repay it, but would set off the claimed debt for rebates in 1971-72. Defendant calculated the amount of rebates it considered due based upon tonnage delivered, and in 1973 delivered enough seed to bring the total to $15,000. It was stipulated that defendant’s calculations were correct and that there was an excess of $75.07 over $15,000.
Plaintiff submits that the claim of defendant is unenforceable because of the applicability of Title 7A, Sec. 2-201, Code. That statute may be referred to as the commercial statute of frauds. It reads, as follows:
“See. 2-201(1) Except as otherwise provided in this section a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought .

“(3) A contract which does not satisfy the requirements of subsection (1) but which is valid in other respects is enforceable .
“(c) with respect to goods for which payment has been made and accepted or which have been received and accepted.”
There is no dispute that none of the transactions between plaintiff and defendant were in writing to the extent required to escape the statute of frauds. There is no conflict in the testimony as to the fact that there were contracts between the parties. Plaintiff in brief and argument discusses the application of the statute to the transaction of October 1973 wherein defendant obtained plaintiff’s check for $15,000 and later delivered a load of cottonseed to plaintiff’s mill. We do not discern how the application of the statute to that transaction affects the right to recover upon defendant’s counterclaim.
The contracts involved in the counterclaim arose in 1971 and in 1972, not in October 1973. The evidence and reasonable inferences indicate those contracts arose in the following manner. In the fall of each year, defendant visited the plaintiff to determine what its business policy was going to be for that year. Defendant, in effect, said: Tennessee Valley Oil, you are the smaller of the three cottonseed oil mills in this area. You want me to bring you my cottonseed this season. You are not big enough to set the prices for seed, but will you meet the prices and other benefits which your larger competitors pay? We know there is no set price. It will change from week to week. Whether Southern and Buckeye will decide to pay an extra amount next spring after they determine how they have done this year is unknown, but if they should pay us an extra sum per ton for deliveries to them will you pay the same?
Plaintiff replied: we will do whatever Buckeye and Southern do. We will be competitive with them.
With that promise or offer made to it, defendant thereafter delivered seed from time to time to plaintiff. Plaintiff acknowledged and receipted delivery by using a delivery ticket showing the tonnage of seed and the price per ton to be paid for seed on that date. Each delivery might have a different price per ton of seed. There was no obligation upon defendant for delivery of seed. We perceive that the preseason statement by plaintiff to be competitive with Buckeye and Southern was nothing more than an offer, which was subsequently accepted when seed was delivered. The contract was complete when delivery was accepted by plaintiff. Whether each delivery is considered as a separate contract or the total deliveries of the season one contract, is immaterial. In either case, there was delivery with receipt and acceptance of the goods in full. Subsection (3)(c) of Sec. 2-201 is satisfied.
The second issue is whether the counterclaim is barred by the limitation of Title 7A, Sec. 2 — 725(1) which provides:
“An action for breach of any contract for sale must be commenced within four *156 years after the cause of action has accrued.”
That statute has the additional proviso as follows:
“this section does not alter the law on tolling of the statute of limitations . . Title 7A, Sec. 2-725(4).
Plaintiff bases its claim of the bar of the statute of limitations upon two incorrect premises. The first is that defendant’s claims accrued in 1971 and 1972. The second is that the statute ran until defendant filed its counterclaim in January of 1976.
As to the first premise, the evidence is undisputed that payment of rebates was made in the spring or summer of the year following the ginning season; that no one knew whether a rebate would be paid until the close of the mill’s financial year. The exact time that a rebate was paid by plaintiff in 1972 was not specified. Though a certain date was not shown when Southern paid rebates in 1973, the evidence was that it occurred between July and September each year. If the trial court found from the evidence that the claim for a rebate for 1971 accrued in August 1972, and that for 1972 in August 1973, the statute of four years had not run against either claim when the counterclaim was filed May 17, 1976.
Plaintiff’s second incorrect premise is that the statute of limitations began to run when the defendant’s cause of action accrued and ran until the counterclaim was filed. That premise is totally contrary to Title 7, Sec. 355, Code of Alabama (1940) and Rule 13(c) ARCP. Title 7, Sec. 355 is as follows:
“When the defendant pleads a set-off to the plaintiff’s demand, to which the plaintiff replies the statute of limitations, the defendant is nevertheless entitled to his set-off, where it was a legal subsisting claim at the time the right of action accrued to the plaintiff on the claim in suit.”
Sec. 355 has been the law of Alabama for almost 100 years. Conner & Wife v. Smith, 88 Ala. 300, 7 So. 150 (1889). The last sentence of Rule 13(c) was added to the equivalent federal rule in order not to conflict with Sec. 355. (Committee Comments.) The provision of the rule as to relation back of counterclaims appears to be nothing more than a restatement of Sec. 355. Sec. 355 has been considered a statute of limitations as to matters of setoff and recoupment and is available in an action brought by a plaintiff on a claim which, but for the statute, would be barred. Wilson v. Montgomery Bank & Trust Co., 203 Ala. 340, 83 So. 64 (1919); Conner & Wife v. Smith, supra. There is no question but that the accrual of plaintiff’s cause of action tolled the running of the statute of limitations as to defendant’s counterclaim. If a setoff was an existing right of action at the time plaintiff’s right of action accrued, it is available as a counterclaim. Washington v. Timberlake, 74 Ala. 259 (1883).
Title 7A, Sec. 2-725 specifically recognized that its enactment did not affect the tolling effect of Sec. 355. Previous statutes of limitations had also been subject to the same effect.
Finding no merit in the issues presented by this appeal, the judgment of the trial court is affirmed.
AFFIRMED.
BRADLEY and HOLMES, JJ., concur.