[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 122 
This controversy has been in litigation since March of 1971. It began when Regal Typewriter Company, Inc. (Regal) filed suit against L.E. Campbell, Individually and d/b/a All-Type Business Machines Sales and House of Typewriters (Campbell) claiming $87,585.25 due by verified account from August 7, 1970. The first trial was to a jury, but the trial court withdrew the case from the jury and entered judgment for Regal. The trial court was reversed in Campbell v. Regal Typewriter Co., Inc., 291 Ala. 334,280 So.2d 764 (1973).
The cause was remanded for a second trial which resulted in a mistrial.
In the present case, Regal claims damages in the amount of $87,664.24 for merchandise sold from August, 1969, through August, 1970. Campbell denied that he owed Regal any amount, said that the account was paid, pleaded accord and satisfaction, and the bar of the three-year statute of limitations. He also filed counterclaims which charged breach of an oral agreement for exclusive territory and damages for fraud and deceit in misrepresenting the price Campbell would pay for machines from Regal.
The case was tried to a jury which rendered a verdict in favor of Regal in the amount $94,812.45. Campbell appealed.
In 1969, Campbell met with representatives of Regal in Atlanta, Georgia, to discuss terms of an agreement under which Campbell would purchase all of Regal's typewriters in seven southeastern states. Various terms of the contract were discussed between the parties in Atlanta, and it was agreed that the terms would be reduced to writing by Regal and forwarded to Campbell. Campbell began picking up the used typewriters immediately. Thereafter, on March 31, 1969, Regal sent to Campbell the written agreement, which essentially provided that Campbell would purchase all secondhand typewriters traded in against new Royal typewriters at various district offices located throughout the southeast. Campbell was to pay for all merchandise on a 30-day basis and was to pay any freight costs incurred in removal of the typewriters from the district offices. Regal agreed to accept charge-backs on incomplete and damaged machines, and Campbell was to make such machines available for inspection by Regal, if requested. Charge-backs were to be made within 60 days after Campbell took possession.
Regal also agreed that no "as is" or secondhand typewriters would be sold directly by them in the seven states involved, and agreed to refer all requests for secondhand machines in this area to Campbell. The agreement provided that it was understood by Campbell that Regal had no restrictions on any of its wholesalers as to the areas in which its secondhand typewriters were sold. The price to be paid for these machines was determined by a wholesale list of current prices, which list Campbell had. The written agreement was said to contain the entire agreement between the parties.
When Campbell received the written agreement, he called Regal in Atlanta, objected to the 30-day terms, and insisted that he be given 90-day terms. He testified that he also questioned the meaning of a warranty provision set out in the agreement *Page 123 
because he did not understand it, and still did not understand it at the time of the trial. The agreement was never signed, but both parties operated under the terms of it, Campbell being given 90-day terms instead of the 30-day term. They had no more discussion about the contract.
Campbell testified that, by the winter of 1969, he was not getting credit for his charge-back requests and complained to Regal about it. According to Campbell, he never did receive all of the charge-back credit. Regal denied that and its representative testified that Campbell received all of the credit to which he was entitled.
Also at about the same time, Campbell said he received information that Regal was selling to other wholesalers at prices substantially lower than Campbell was getting; and that, in the spring of 1970, he discovered that Regal had consummated a transaction with another wholesaler whereby that wholesaler was charged prices far below the unit prices being invoiced to Campbell. Regal denied this. Thereafter, Campbell made no further payments, stopped picking up the used machines, and advised Regal of his intention to terminate the agreement.
The transcript in this case is long and complex. There is evidenced much acrimony between the parties. On appeal, Campbell cites some one hundred and thirty issues to be considered by this court. To attempt to simplify the issues and in an effort to focus the parties on the major areas of contention on appeal, we granted a motion for a pre-hearing conference under the new rules of appellate procedure. See ARAP 33. Three members of this court constituted a panel before which the attorneys for both appellant and appellee appeared and agreed that the primary issues involved on appeal were in the areas which will be treated herein.
Campbell argues that he was prejudiced by the court's failure to require Regal to make full and complete answers to interrogatories, to produce certain documents sought by Campbell, and should have imposed more stringent sanctions for Regal's failure to fully answer interrogatories and produce documents. He also argues that the trial court abused its discretion in requiring him to answer interrogatories and requiring him to produce various documents at the motion of Regal, says that he should have been awarded expenses incurred by him by being required to make answers to various interrogatories, and should not have been subjected to deposition in the manner required by counsel for Regal.
The thrust of Campbell's argument is that the court abused its discretion in allowing Regal greater discovery than was permitted Campbell.
As we have indicated, the record in this case is long, and it is replete with discovery motions of various kinds. Both sides sought, and were permitted, extensive discovery. Both were required to answer lengthy interrogatories, both were required to produce voluminous documents, and both were required to submit to deposition at the instance of the other. The trial court was very generous, properly so, in allowing exhaustive discovery by both parties. It finally entered an order requiring that all discovery be completed by a specific date. Neither party discovered all that was sought.
The Alabama Rules of Civil Procedure permit very broad discovery and the rules must be broadly and liberally construed.Cole v. Cole Tomato Sales, Inc., 293 Ala. 731, 310 So.2d 210
(1975). However, ARCP 26 (c) recognizes that the right of discovery is not unlimited, and gives the court broad power to control the use of the process and to prevent its abuse by any party. The rule does not allow an arbitrary limit on discovery, but instead vests the trial court with discretion in the discovery process. The question on review then becomes one of whether, under all of the circumstances, the trial court has abused this discretion. Tiedman v. American Pigment Corp.,253 F.2d 803 (4th Cir. 1957). In exercising its discretion, the trial court should be guided by the spirit of the rules, which is to permit full discovery so as to save time, effort and money and to expedite the trial with a view to achieving *Page 124 
substantial justice for each litigant. First National Bank inGreenwich v. National Airlines, Inc., 22 F.R.D. 46 (D.C.N Y 1958).
The particular details of the discovery process must necessarily be left to the sound discretion of the trial court. The court may enter appropriate orders under ARCP 26 (c) and if necessary, on a showing of undue burden, it may order alternative means of discovery. Burns v. Thiokol Chemical Corp., 483 F.2d 300
(5th Cir. 1973). Of course, the fact that it may be difficult to produce information which is discoverable is not a justification for disallowing the discovery of that information and the fact that it is frequently burdensome to answer extensive interrogatories is not sufficient alone for excusing a party from making such answers. Krantz v. United States, 56 F.R.D. 555
(D.C.W.Va. 1972).
Applying these rules to the instant case, we conclude that, under the circumstances presented by the record before us, the trial court did not abuse its discretion. As indicated, discovery was extensive and was evenly allowed each party. Both were required to produce extensively. On occasion, the court required Regal to pay the expenses incurred by Campbell in meeting the discovery requirement. We find no reversible error in the court's handling of the discovery process.
Campbell next contends that the trial court erred in permitting Regal's witness, a Mr. Centracchio, to testify as to the amount which Regal contended was due on account from Campbell.
The record reflects the following:
 "Q. Mr. Centracchio, I hand you what has been marked Plaintiff's Exhibits 1 through 32, inclusive, and ask you if you have previously looked at those and gone through them?
"A. Yes, I have.
 "Q. Mr. Centracchio, were those records records of Regal Typewriter Company kept in the regular course of business?
"A. Yes, they were.
 "Q. Were they kept under your supervision and control?
"A. Yes, sir.
 "Q. Do those records accurately and truly reflect the amount of money due, owing and unpaid from Mr. L.E. Campbell to Regal Typewriter Company?
 "MR. HOWARD: We object to the form of that question, if the Court please, and to the lack of predicate for the testimony that is now called for.
"THE COURT: Overrule.
". . .
 "Q. Mr. Centracchio, what is the total amount owed by Mr. L.E. Campbell to Regal Typewriter Company, as reflected by the records of Regal Typewriter Company?
 "MR. HOWARD: We object to that, if the Court please, the witness is going to sit there and read from an instrument . . .
". . .
"THE COURT: Overrule.
". . .
"A. The account is $87,585.25."
Campbell contends that Mr. Centracchio was not qualified to testify as to the amount owed because the invoices, Exhibits 1 through 32, constitute the best evidence of the amount due from Campbell to Regal. In making this argument, Campbell relies uponBear v. Swift Co., 259 Ala. 668, 68 So.2d 718 (1953). In that case, this court held that a witness, who had no personal knowledge of the ledger sheets, which were not in evidence, was erroneously permitted to state the amount the defendants owed to the plaintiff. The court held:
 "The said ledger sheet was the best evidence of what it portrayed and the witness . . . should not have been permitted, over the objection of the defendants, to testify as a conclusion that the defendants owed the plaintiff the sum indicated on the paper. [Citations Omitted]." (259 Ala. at 670, 68 So.2d at 720.)
There is a distinction here, however. The invoices were in evidence. Mr. Campbell *Page 125 
admitted that he had received them and that he had no record that they had been paid. The invoices were properly predicated under Title 7, § 414, Code. The witness was authorized to state what those invoices reflected as the amount due.
Campbell asserts that the trial court erred in charging the jury with respect to the statute of frauds, as contained in § 2-201, U.C.C. Campbell's contention at trial was that the written agreement drawn after the meeting of the parties in Atlanta did not constitute the entire agreement between the parties. He contended that the agreement reached between them actually included terms which were not incorporated into the written agreement. In that regard, the court charged the jury as follows:
 "Ladies and gentlemen, in this case it is for you to determine what the contract was between the parties if, in fact, there was a contract between these parties and it is for you to determine the terms of such contract. In connection with this, I will read to you a certain portion of our Uniform Commercial Code and in connection with the reading of that codification, I will say to you that the fact that I read it to you does not mean that it is applicable in this case. It is for you to determine whether or not such section applies but I will charge you that within the meaning of the section I will read to you, both of these parties, the plaintiff and the defendant, were merchants as the term is used in the section. As I say to you, our Uniform Commercial Code has a provision which you may or may not find to be applicable in this case, depending on what you find the true facts to be . . . That section provides:
 "`Except as otherwise provided in this section, a contract for the sale of goods for the price of $500.00 or more, is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought, or by his authorized agent or broker. A writing is not sufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable under this paragraph beyond the quantity of goods shown in the writing.'"
The court went on to restate that the jury was the trier of fact, and it was left to the jury to determine whether the writing constituted the entire agreement between the parties. It was Campbell who contended, in one of his counterclaims, that Regal was liable to him for breach of contract. Regal defended that claim by asserting the written agreement. Campbell denied that the writing included the full agreement between the parties. This constituted a direct conflict in the evidence, which the court properly submitted to the jury. We find no error to reverse on this ground.
We agree with Campbell that he was entitled to go to the jury on his claims of fraud. Campbell asserted that Regal had fraudulently entered into the agreement with him, having no intention of performing its part of the contract. He was entitled to have this issue submitted to the jury, whether or not the agreement was in writing. See Clanton v. Scruggs, 95 Ala. 279,10 So. 757 (1891).
Campbell contends that the court improperly charged the jury on the statute of limitations referable to the fraud. After defining for the jury the elements of fraud, and the burden of proof, the trial court charged the jury:
 "As a second defense to the counterclaim based upon fraud, the plaintiff has asserted the statute of limitations of one year. The counterclaim which asserts the alleged fraud was filed in this action on August 28, 1974. The statute of limitations under our law provides that an action based on fraud must be brought within one year of the date when the cause of action of fraud accrues. This one year statute of limitations in our state is subject to limitation which is found at Title 7, Section 42 of our Code and I will read that to you. Now, the fact that I read this section to you does not connote to you and should not be taken by you as meaning or implying that *Page 126 
it is applicable in this case. It is for you to determine whether or not it applies considering all of the facts.
 ". . . `In actions seeking relief on the grounds of fraud where the statute has created a bar, the cause of action must not be considered as having accrued until the discovery by the aggrieved party of the fact constituting the fraud, after which he must have one year within which to prosecute his suit.'
 "Now, of course, as I told you, the fact that I read that to you does not mean it applies in this case. This section . . would have no application in this case if the defendant knew of or discovered his right of action founded on fraud more than one year before August 28, 1974.
". . .
 "The discovery or notice of any alleged fraud does not mean actual notice. Of course, a fraud is deemed to be discovered within contemplation of our law when it is readily discoverable or when a party is put on notice thereof. It is for you to determine whether the statute of limitations creates a bar to the counterclaim founded on fraud in this case."
Campbell objected to the court's oral charge stating ". . . the defendant excepts to the portion of the oral charge in which the Court stated that the statute of limitations would apply in this case, in that this being a counterclaim arising out of a transaction relied upon by the plaintiff in this case, the limitation would not apply . . . We except to the charge of the Court restricting the time of discovery to one year prior to August 28, 1974 . ."
Campbell asserts here that the counterclaims for fraud are not subject to the one-year statute of limitation. The last sentence of ARCP 13 (c) provides: "All counterclaims other than those maturing or acquired after pleading shall relate back to the time the original plaintiff's claim arose." According to the Committee Comments, the inclusion of this relation back of counterclaims was to harmonize with Title 7, § 355, Code, which provides:
 "When the defendant pleads a set-off to the plaintiff's demand, to which the plaintiff replies the statute of limitations, the defendant is nevertheless entitled to his set-off, where it was a legal subsisting claim at the time the right of action accrued to the plaintiff on the claim in suit."
The significance lies in the distinction between recoupment and set-off. Alabama law is consistent with the statement in City ofGrand Rapids, Mich. v. McCurdy, 136 F.2d 615, 619 (6th Cir. 1943):
 ". . . Recoupment differs from set-off mainly in that the claim must grow out of the same transaction which furnishes the plaintiff's cause of action, and is in the nature of a claim of right to reduce the amount demanded. Recoupment goes to the justice of the plaintiff's claim, while set-off is not necessarily confined to the justice of such particular claim. . . ."
See Norton v. Bumpus, 221 Ala. 167, 127 So. 907 (1930); Walker v.McCoy, 34 Ala. 659 (1859); and Mauldin, Montague Co. v.Armistead, Ex'r, 14 Ala. 702 (1848).
A counterclaim in the nature of a set-off is subject to applicable statutes of limitation in accordance with Title 7, § 355, supra, as per ARCP 13 (c), supra. Counterclaims in the nature of recoupment are not defeated by the general statutes of limitation. See Anno. 1 A.L.R.2d 630, 666.
Harton v. Belcher, 195 Ala. 186, 70 So. 141 (1915), was an action upon a promissory note to which the defendant pleaded two pleas of recoupment alleging that the defendant was defrauded and deceived by the plaintiff in the sale of timber and lands for which the note was given. Responding to the contention that the pleas were defective in failing to show that they were not barred by the statute of limitation, this court said:
 ". . . Defendant's claim sprung out of the contract between the parties and affected the considerations moving between them; it ran with the contract, so to speak, and, so far at least as it went to the consideration, as it did in the case *Page 127 
here, defendant might rely on it without regard to the statute of limitation. So long as the contract, upon a breach of which the claim is predicated, subsists, and may be enforced, the claim itself may be pleaded in reduction, at least, of the demand on the contract; and this notwithstanding the matter of recoupment, independently considered, may be barred, not only when it is pleaded, but also when the right of action, against which it is asserted, accrued. [Citation Omitted]." (195 Ala. at 190, 70 So. at 142.)
This states the rule generally followed in this country. The following appears at 1 A.L.R.2d 666, 667:
 "Almost without exception the cases which deal with recoupments, so recognized and named, run to the effect that if a defendant's claim is in fact a recoupment the general statutes of limitation do not defeat it; on the contrary it may be availed of defensively so long as plaintiff's cause of action exists."
See also: Wilson v. Montgomery Bank Trust Co., 203 Ala. 340,83 So. 64 (1919).
The ARCP has not altered this general rule. The adoption of ARCP 13 has made matters of recoupment the subject of compulsory counterclaims and has not affected matters of set-off which are the subject of the limitation expressed in ARCP 13, which embodies the provisions of Title 7, § 355, Code.
Clearly, the matter asserted by Campbell in this case grew out of and was a part of the transaction sued on by Regal. It constitutes a compulsory counterclaim under Rule 13, ARCP. Therefore, his claim cannot be defeated by the general statute of limitations for fraud actions. The trial court, therefore, erred in so charging the jury; and, for that reason, the judgment appealed from must be and the same is reversed and remanded.
REVERSED AND REMANDED.
MADDOX, FAULKNER, JONES, EMBRY and BEATTY, JJ., and SIMMONS, Retired Circuit Judge, sitting by designation of the Chief Justice, concur.