644 So.2d 462 (1994)
ROMAR DEVELOPMENT COMPANY, INC., and Interim Land Company
v.
GULF VIEW MANAGEMENT CORPORATION and Midtown Restaurants Corporation.
1921521.
Supreme Court of Alabama.
July 1, 1994.
*463 William J. Baxley and David McKnight of Baxley, Dillard, Dauphin & McKnight, Birmingham, and Bayless Biles of Wilkins, Bankester, Biles & Wynne, Bay Minette, for appellants.
Steven F. Casey and Terri E. Wilson of Balch & Bingham, Birmingham, and Robert A. Wills of Wills & Simon, Bay Minette, for appellees.

On Application for Rehearing
PER CURIAM.
The opinion of December 30, 1993, is withdrawn, and the following opinion is substituted therefor.
This case involves a dispute over whether Gulf View Management Corporation ("Gulf View") has an easement over a road known as "Loop Road," which is owned by Romar Development Company, Inc. ("Romar"), and Interim Land Company ("Interim"), and, if so, the extent of the easement. The easement claimed is the right of tenants, employees, and invitees of Gulf View, and employees and invitees of the tenants of Gulf View, to access over Loop Road and from Loop Road to Gulf View Square Shopping Center ("Gulf View Square").
Interim and The Square Associates ("Associates"), Gulf View's predecessor in title, executed a contract on March 15, 1984, which contained the following relevant provisions:
"B. Proposed Roadway. Interim proposes to construct an asphalt roadway within a 60-foot wide strip of land, which strip runs along the Western boundary of the Property from Alabama Highway 182 Northerly to the Northwest corner of the Property [The Square].... Interim agrees to give to Gulf View for itself, its tenants, employees and invitees, and successors and assigns, rights of ingress and egress to and from said proposed roadway to the Property, all at their own risk and *464 without any liability on the part of Interim or its successors or assigns for the maintenance or condition of said roadway. Gulf View agrees that no such permitted use of said strip or roadway will damage the Property and will promptly repair at its own cost and expense any damage that may occur to same by any permitted user claiming under Gulf View.
"C. Interim hereby agrees to make available for a period of twenty-four (24) months from date hereof to Gulf View in connection with its development of the shopping center, at least twenty-six (26) sewer taps at a price equal to the sum of Three Thousand, Five Hundred and 00/100 Dollars ($3,500.00) per tap, plus an amount equal to twelve percent (12%) per annum from date hereof to date of payment. Such sewer taps shall be purchased by Gulf View for cash, and shall be made available by Interim in a timely manner in connection with the development of the shopping center.
"D. Survival of Representations and Warranties. The delivery by Interim and the acceptance by Gulf View of the Deed shall not be deemed full compliance by Interim of its obligations under the Contract dated December 12, 1983, and the parties expressly agree that all representations and warranties on the part of Interim and Gulf View under the said Contract and hereunder shall survive the closing and the delivery of the Deed and shall remain in full force and effect.
"E. Gulf View covenants and agrees to commence site preparation for the construction of a shopping center on the property described.... Grantor, its successors and assigns, reserve the right to approve the site plan, architectural plan and buffer regions of said shopping center, which approval shall not be unreasonably withheld. A preliminary site plan prepared by Donald N. Holley, AIA, dated March 7, 1984, is hereby approved by Interim.
"F. Binding Effect. This Agreement is and shall be binding upon the parties hereto and their successors and assigns."
After the contract was executed, Interim conveyed The Square to Associates. Interim conveyed the remaining land owned by it, including Loop Road, to Romar.
Pursuant to the contract, Interim approved a proposed site plan for The Square that included the proposed construction of three entrances to the shopping center from Loop Road. Both The Square and Loop Road, along with the three "curb cuts" allowing access to the shopping center, were constructed according to the plan.
After Associates defaulted on a loan, Gulf View acquired title to The Square on February 10, 1989, by foreclosure deed. Until October 16, 1992, tenants of Gulf View, and employees and invitees of Gulf View and its tenants, had unhampered access to The Square from Loop Road.
On October 16, 1992, agents of Interim blocked two of the entrances from Loop Road to the shopping center. Interim claimed that it was owed substantial sums for providing sewer taps pursuant to paragraph C of the contract, which is as follows:
"C. Interim hereby agrees to make available for a period of twenty-four (24) months from date hereof to Gulf View in connection with its development of the shopping center, at least twenty-six (26) sewer taps at a price equal to the sum of Three Thousand Five Hundred and 00/100 Dollars ($3,500.00) per tap, plus an amount equal to twelve percent (12%) per annum from date hereof to date of payment. Such sewer taps shall be purchased by Gulf View for cash, and shall be made available by Interim in a timely manner in connection with the development of the shopping center."
Gulf View and a tenant of The Square, Midtown Restaurants, sued to enjoin the blockade and sought a declaration of their rights under the contract. Romar and Interim counterclaimed, seeking restitution for their expenses incurred in providing the taps and in performing maintenance on Loop Road. On June 25, 1993, the trial court entered a judgment holding that Gulf View had an easement of access to Loop Road, and a right-of-way over the entirety of Loop Road. It also held that the counterclaim was *465 barred by Ala.Code 1975, § 6-2-34(9), the statute of limitations applicable to claims for breach of contract, and awarded Gulf View attorney fees. Romar and Interim appealed.

I. Easement
In Cleek v. Povia, 515 So.2d 1246 (Ala.1987), this Court recognized that a contract to create an easement was enforceable. Although the usual case presents the "reciprocal easement" situation, where adjacent landowners contract for the common use of some property or area, that is not a requirement for a contract creating an easement. "Equitable relief has been extended not only to contracts containing a promise to transfer an easement in the future, but also to contracts found to manifest a present intent to create an easement." 3 R. Powell, Powell on Real Property, § 408 (1985). As we observed in Cleek, "Many jurisdictions have followed Powell in the creation of easements by contract." Cleek, at 1248.
The trial court properly found that the March 15, 1984, contract created for Associates an easement for the use of Loop Road and that this easement is now in favor of Gulf View, as successor of Associates. However, because that contract created the easement, that contract also defines the extent of the easement. As to the extent of the easement, we disagree with the findings of the trial court.
Paragraph B, of the contract, in which the extent of the easement is defined, describes only a "60-foot wide strip of land, which strip runs along the Western boundary of the Property from Alabama Highway 182 Northerly to the Northwest corner of the Property." (Emphasis added.) This provision clearly and unambiguously describes a 60-foot-wide strip of land running generally north and south in a line bordering the west side of Gulf View Square. It thus neither requires, nor, indeed, permits, judicial construction. P & S Business, Inc. v. South Central Bell Telephone Co., 466 So.2d 928, 931 (Ala.1985); Kinnon v. Universal Underwriters Ins. Co., 418 So.2d 887, 888 (Ala. 1982).
However, the trial court's order of judgment defined the extent of the easement in the following manner:
"In light of the above findings of fact and conclusions of law, the court ORDERS as follows:
"1. That plaintiff Gulf View, each of the future owners of Gulf View Square or any portion thereof, the successors and assigns of plaintiff Gulf View and/or any such future owner, each present and each future tenant ... of any portion of Gulf View Square, each present and each future employee of plaintiff Gulf View, any such future owner and/or any such tenant and each present and each future invitee of plaintiff Gulf View, any such future owner and/or any such tenant (collectively the `Benefited Parties'), have and shall have the right to use and enjoy, in common with others, a non-exclusive perpetual easement on, across and along the strip of land, sixty feet in width, commencing on the western boundary of Gulf View Square at the intersection of such strip with the north right-of-way of Alabama Highway 182 and continuing northward, then eastward, then southward (i.e., in a loop) to again intersect with said Alabama Highway 182, and also on, across and along all paved portions of the roadway, whether or not contained within such sixty-foot strip, commencing adjacent to the western boundary of Gulf View Square at the intersection of said roadway and Alabama Highway 182 and continuing northward, then eastward, then southward to again intersect with Highway 182 (the areas within which either such sixty-foot strip or such paved roadway, or both, are located being referred to below as the `Easement Area'), for ingress and egress for pedestrian and/or vehicular traffic in either direction, including without limitation for ingress and egress to and from Gulf View Square via Alabama Highway 182.

"2. That the defendants and each successive owner of the said Loop Road are obligated to maintain a paved roadway within the sixty-foot wide strip described in Paragraph 1 above suitable for ingress and egress for pedestrian and/or vehicular *466 traffic consistent with the rights described in said Paragraph 1.
"3. That each Benefited Party shall be entitled to such further access to the Easement Area (in addition to the rights of ingress and egress described above) as shall be necessary or desirable for the purpose of the full and continuing use and enjoyment of the rights described in Paragraph 1 above.
"4. That the defendants and each of their respective agents, representatives, affiliates, officers, directors, employees, successors and assigns hereby are permanently estopped to deny the existence of the rights described in Paragraphs 1, 2, and 3.
"5. That defendants, and each of their agents, representatives, affiliates, officers, directors, employees, successors and assigns be, and they are hereby, permanently enjoined from obstructing, limiting or otherwise impairing or interfering with the use of the Loop Road, including the entrances and exits to and from such roadway abutting the Gulf View Square as a means of ingress and egress to and from Gulf View Square for pedestrian and/or vehicular traffic and from otherwise interfering with the full enjoyment by plaintiff or any future owner of Gulf View Square or any portion thereof or any of their respective tenants, employees, invitees, successors and/or assigns of the rights described in Paragraphs 1, 2 and 3 above."
(Emphasis added.)
These statements clearly indicate that the judgment describes Loop Road as enclosing Gulf View Square on three sides. More specifically, the order describes Loop Road as "commencing on the western boundary of Gulf View Square at the intersection of such strip with the north right-of-way of Alabama Highway 182 and continuing northward, then eastward, then southward (i.e., in a loop) to again intersect with said Alabama Highway 182." (Emphasis added.) The "eastward" call thus describes Gulf View Square as bordered on the west, north, and east by Loop Road and on the south by Highway 182. This view of the location of Gulf View Square also accounts for that portion of the order granting "each Benefited Party ... such further access to the Easement Area (in addition to the rights of ingress and egress described above) as [should] be necessary or desirable for the purpose of the full and continuing use and enjoyment of the rights described in Paragraph 1." (Emphasis added.) The trial court evidently anticipated that tenants of Gulf View Square would, in the future, require access to Loop Road from the north and east sides of Gulf View Squareas well as from the west sideand attempted to provide for such access.
However, maps and documents accompanying the "Master Declaration of Covenants, Conditions and Restrictions" filed in the Baldwin County Probate Court in connection with the development of Gulf View Square and the adjoining area[1] reveal that from the northwest corner of Gulf View Square, Loop Road turns westnot east as described by the judgmentaway from Gulf View Square and runs through a residential area before again turning south to intersect with Highway 182. Indeed, this fact is undisputed by the parties.
The judgment not only contradicts the unambiguous language of the contract, but describes in metes and bounds a roadway that does not exist. The judgmentto the extent that it enlarged beyond the description contained in Paragraph B of the contract that portion of Loop Road that is subject to the easementwas based on a clearly erroneous factual finding and is plainly and palpably wrong. Consequently, that judgment is modified to restrict the portion of Loop Road that is subject to the easement to that portion "within a 60-foot wide strip of land, which ... runs along the Western boundary of [Gulf View Square] from Alabama Highway 182 Northerly to the Northwest corner of [Gulf View Square]."
Romar and Interim also contend that the trial court erred when it ordered them *467 "to maintain a paved roadway," within the boundaries of the easement, i.e., Loop Road. Their argument is apparently that if the contract granted Gulf View an easement over Loop Road, then Gulf View must bear the responsibility for "maintaining" the road. The trial court's use of the word "maintain" was in the sense that Interim was obligated "to provide for" a paved road that would grant access to the shopping center. Subject to the modification discussed in the preceding paragraph and to the interpretation of the court's use of the word "maintain" discussed in this paragraph, the judgment, as it respects the easement, is affirmed.[2]

II. Sewer Taps
Interim and Romar contend that the trial court erred in holding that their counterclaim for recovery of fees for sewer taps that Interim had provided to service Gulf View Square was barred by the statute of limitations.
It is undisputed that Interim had, pursuant to Paragraph C of the March 15 contract, provided for the use of Gulf View Square 34 sewer taps and that it received no payment for those taps. Also, the six-year limitations period in which Interim could have sought affirmative recoupment or recovery of the sewer fees in a claim for breach of contract had expired before Romar and Interim blocked the shopping center.[3] Moreover, Gulf View's claim requests only equitable relief, specifically, an injunction and a declaratory judgment, not damages. The issue, therefore, is whether Romar and Interim may seek monetary relief, which would represent an affirmative recovery on their counterclaim, where Gulf View's claim seeks only equitable relief.
At the outset, we note that recovery on both the counterclaim and the claim turn on Paragraphs C and B, respectively, of the March 15 contract. Where the claim and the counterclaim allege respective breaches of the same contract, the counterclaim is compulsory. Cooper v. Reaves, 365 So.2d 670, 671 (Ala.1978); see also Ewing & Gaines v. Shaw & Co., 83 Ala. 333, 335, 3 So. 692, 693 (1888) (recoupment "authorizes the recovery of any damages sustained by the defendant, which grow out of, or are connected with, the matters set forth in the plaintiff's complaint, and in breach of the contract upon which his suit is founded, or in violation of any duty imposed by the contract"). In other words, the counterclaim "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim," and it is, therefore, a compulsory counterclaim. Ala.R.Civ.P. 13(a).[4]
In considering this issue, we are constrained to revisit Sharp Electronics Corp. v. Shaw, 524 So.2d 586 (Ala.1987). That case involved an action begun in December 1980 by Sharp Electronics Corporation ("Sharp"), a manufacturer of photocopier equipment, in which it claimed that Shaw, one of its dealers, had failed to pay for photocopy equipment Sharp had supplied. Shaw counterclaimed against Sharp, alleging misrepresentation in connection with statements made in August 1975 by Sharp's agents regarding the quality of its photocopy equipment. The trial court entered a judgment on a jury verdict in favor of Sharp for $5,250.86, and in favor of Shaw on his counterclaim for $100,000. Id. at 588. Thus, one of the issues on appeal was the extent to which Shaw's counterclaim, based on an alleged misrepresentation made five years before the commencement of the action, was barred by the statute limiting the time in which to begin actions for misrepresentation, *468 that is, "whether... Shaw [could] use his compulsory[5] counterclaim offensively, or only defensively for the limited purpose of canceling out Sharp's $5,250.86 recovery." Id. at 591 (footnote added).
The Court ultimately held that the evidence justified the jury's finding that the misrepresentation had not been, and could not reasonably have been, discovered more than one year before the accrual of Sharp's cause of action, and, consequently, that Shaw was entitled to recover an amount exceeding Sharp's recovery. Id. at 591. However, it also concluded that a defendant may not recover on a compulsory counterclaim an amount exceeding the amount of the plaintiff's claim, if the limitations period in which the counterclaim could have been asserted as an independent cause of action has expired before the plaintiff's cause of action accrues. Id.
The same year Shaw was decided, the Florida Supreme Court expressly adopted the opposite rule, concluding that a defendant may recover on a compulsory counterclaim an amount exceeding the amount of the plaintiff's claim, regardless of whether the limitations period has expired on the counterclaim before the plaintiff's cause of action accrues. Allie v. Ionata, 503 So.2d 1237 (Fla.1987) (approving Cherney v. Moody, 413 So.2d 866 (Fla.Dist.Ct.App.1982)). In our view, this conflict in authority warrants a thorough reexamination of Shaw's analysis and rationale, beginning with a historical review of recoupment and set-offthe antecedents of "modern" compulsory and permissive counterclaims, respectivelyand the developments of those concepts in Alabama.

A. Set-Off/Permissive Counterclaim
Pleas of set-off were "purely statutory." Alabama Power Co. v. Kendrick, 219 Ala. 692, 695, 123 So. 215, 218 (1929); Merchants Bank v. Acme Lumber & Mfg. Co., 160 Ala. 435, 441, 49 So. 782, 784 (1909). T. Waterman, A Treatise on the Law of Set-Off, Recoupment, and Counter Claim § 10, at 11 (2d ed. 1872). Even so, set-off was characterized by a number of common features relevant to this case. First, set-off was "a counter demand which the defendant [held] against the plaintiff arising out of a transaction extrinsic to the plaintiff's cause of action." Id. § 2, at 3 (emphasis added). Second, "[t]he demand to be set off must have been a subsisting cause of action at the commencement of the plaintiff's suit ... and upon which an action might have been sustained." Id. § 66, at 78. Third, the amount recovered by the defendant under a plea of set-off could exceed the amount recovered by the plaintiff on the original claim. Id. § 469, at 483-84.
These features of the plea of set-off were represented in Acts of the Legislative Council and House of Representatives of the Mississippi Territory of 1799. A Law Concerning Defalcation, February 28, 1799, Sargent's Code: A Collection of the Original Laws of the Mississippi Territory Enacted 1799-1800 by Governor Winthrop Sargent and the Territorial Judges 26-27 (1939). The substance of these provisions was codified in Ala.Code 1852, §§ 2240 and 2241. Specifically, those sections provided:
"[Section 2240]. Mutual debts, liquidated or unliquidated demands not sounding in damages merely, subsisting between the parties at the time of suit brought, may be set-off, one against the other, by the defendant or his personal representative, whether the legal title be in the defendant or not; and such set-off, if found for the defendant, extinguishes either in whole or in part, as the case may be, the plaintiff's demand.
"[Section 2241]. If the debt or demand so offered to be set-off, exceed the amount of the plaintiff's demand, the amount of such excess being found by the jury, judgment must be rendered against the plaintiff for costs, and in favor of the defendant for such excess." *469 (Emphasis added.) These sections passed unchanged in matters relevant to this case into the next seven Codes. For the recodification of § 2240, see Ala.Code 1867, § 2642; Ala.Code 1876, § 2991; Ala.Code 1887, § 2678; Ala.Code 1896, § 3728; Ala.Code 1907, § 5858; Ala.Code 1923, § 10172; Ala. Code 1940 (Recomp.1958), Tit. 7, § 350. For the recodification of § 2241, see Ala.Code 1867, § 2643; Ala.Code 1876, § 2992; Ala. Code 1887, § 2679; Ala.Code 1896, § 3729; Ala.Code 1907, § 5860; Ala.Code 1923, § 10174; Ala.Code 1940 (Recomp.1958), Tit. 7, § 352.
In 1867, the legislature expanded the availability of pleas of set-off. Act No. 631, 1867 Ala. Acts 676 (first codified at Ala.Code 1867, § 2647) (the "relation-back provision"), provided "[f]or the allowance of offsets in certain cases, where [the] statute of limitation is pleaded." More specifically, it provided:
"That in cases in the courts of this State where the defendant pleads a set-off to the plaintiff's demand, to which the plaintiff pleads the statute of limitation, the defendant, notwithstanding such plea, shall be entitled to have the benefit of his debt as a set-off, where such set-off was a legal subsisting claim at the time the right of action accrued to the plaintiff, on the claim sued on."
(Emphasis added.) The primary purpose of this section was to toll periods prescribed by statutes of limitations during the time between the accrual of the plaintiff's cause of action and the commencement of the action thereon. Washington v. Timberlake, 74 Ala. 259, 264 (1883) ("the precise object the legislature had in view was, that demands held by defendants when the adversary plaintiff's right of action accrued, if then free from the infirmity of age, should not afterwards lose their availability as a defense, by mere lapse of time"). Thus, § 2647 operated as an "exception" or "qualification" to the efficacy of applicable statutes of limitations. Dunham Lumber Co. v. Holt, 124 Ala. 181, 185, 27 So. 556, 558 (1900). This section was recodified without relevant change in the next six Codes. See Ala.Code 1876, § 2996; Ala. Code 1887, § 2682; Ala.Code 1896, § 3732; Ala.Code 1907, § 5863; Ala.Code 1923, § 10177; Ala.Code 1940 (Recomp.1958), Tit. 7, § 355.

B. Recoupment/Compulsory Counterclaim
Unlike its statutory counterpart, recoupment was of common-law origin. It "was an innovation upon, or departure from, the strict rules of law, sanctioned by the courts for the purpose of doing equity between parties, where it either could not otherwise be attained, or not without a circuitous and expensive process." T. Waterman, A Treatise on the Law of Set-Off, Recoupment, and Counter Claim § 463, at 480 (2d ed. 1872); see also J.C. Lysle Milling Co. v. North Alabama Grocery Co., 201 Ala. 222, 223, 77 So. 748, 749 (1917). "Recoupment applie[d], when the abatement claimed [sprang] out of the very contract, or transaction, on which the recovery [was] sought." Washington v. Timberlake, 74 Ala. 259, 263 (1883). At common law, recoupment could be asserted as "a mere right of deduction from the amount of the plaintiff's recovery," T. Waterman, supra, § 460, at 480, that is, the defendant could not recover an amount in excess of the amount awarded the plaintiff on his claim. Id. § 469, at 483.
As a corollary of this latter principle, recoupment was not subject to statutes of limitations. It was said to "run" with the instrument out of which the plaintiff's breach-of-contract claim arose and was not time-barred as long as that contract was executory and enforceable. Conner v. Smith, 88 Ala. 300, 311, 7 So. 150, 153 (1889); see also City of Grand Rapids v. McCurdy, 136 F.2d 615, 619 (6th Cir.1943) ("The defense of recoupment exists as long as the plaintiff's cause of action exists and may be asserted, though the claim as an independent cause of action is barred by limitations"). Shaw aptly referred to this aspect of recoupment as the "`indestructibility-of-recoupment' doctrine." 524 So.2d at 589.
In contrast to set-off, which had been the subject of legislation as early as 1799, recoupment first received the attention of our legislature in 1879. Act No. 126, 1879 Ala. Acts 154 (codified at Ala.Code 1886, § 2683) (the "affirmative-recoupment rule"). Section 2683 provided:

*470 "On a plea of recoupment, if the claim or demand of the defendant equals the claim or demand of the plaintiff, judgment must be rendered for the defendant; if the claim or demand of the defendant exceeds the claim or demand of the plaintiff, and the plaintiff be the party liable to its satisfaction, judgment must be rendered against him in favor of the defendant for such excess and all costs."
(Emphasis added.) This section modified common-law recoupment by authorizing an "affirmative recovery" on a counterdemand, that is, the recovery of an amount exceeding the amount of the original claim. The affirmative-recoupment provision was recodified without relevant change in the next four Codes. See Ala.Code 1896, § 3734; Ala. Code 1907, § 5865; Ala.Code 1923, § 10179; Ala.Code 1940 (Recomp.1958), Tit. 7, § 357.
As this history indicates, the indestructibility-of-recoupment doctrine was, before 1879, clearly established in Alabama. After passage of the affirmative-recoupment provision, a defendant could recoup an amount in excess of the plaintiff's claim. Inevitably, of course, the question would arise whether the affirmative-recoupment provision, that is, the provision allowing a recovery of an amount exceeding the original claim, had effectively incorporated the indestructibility-of-recoupment rule to authorize an affirmative recovery without regard to statutes of limitations, or whether the relation-back provision qualified the indestructibility-of-recoupment rule to foreclose this result.
The first opinion in which this Court considered recoupment after the enactment of the affirmative-recoupment provision suggested, albeit in dicta, that the claim could be asserted without regard to the statute of limitations. In Conner v. Smith, 88 Ala. 300, 7 So. 150 (1889), the Court stated:
"Such a claim [recoupment] runs with the contract, so to speak, and may, at least when it goes to the consideration, as it generally does in some sort, and as in the case here, be relied on without regard to the statute of limitations. So long as the contract, upon a breach of which the claim is predicated, subsists, and may be enforced, the claim itself may be pleaded in reduction, at least, of the demand on the contract; and this notwithstanding the matter of recoupment, independently considered, may be barred, not only when it is pleaded, but also when the right of action, against which it is asserted, accrued."
88 Ala. at 311, 7 So. at 153 (emphasis added). In explaining that recoupment would "at least" reduce or cancel the amount of the claim without regard to timeliness, the Court implicitly construed § 2683 as incorporating the indestructibility-of-recoupment rule to allow an affirmative recovery without regard to the statute of limitations.
The Conner dicta were subsequently quoted verbatim in cases both preceding and succeeding the adoption of the Alabama Rules of Civil Procedure in 1973. Snow v. Baldwin, 491 So.2d 900 (Ala.1986); Campbell v. Regal Typewriter Co., 341 So.2d 120 (Ala. 1976), holding modified, Sharp Electronics Corp. v. Shaw, 524 So.2d 586 (Ala.1987); Downing v. Williams, 238 Ala. 551, 191 So. 221 (1939); Wilson v. Montgomery Bank & Trust Co., 203 Ala. 340, 83 So. 64 (1919); Harton v. Belcher, 195 Ala. 186, 70 So. 141 (1915). Thus, when this Court adopted the Rules of Civil Procedure, the concept of incorporation of the two rules was represented in our cases.

C. Rules of Civil Procedure
Among the changes effected in 1973 by the Rules was the "modernization of terminology." Ala.R.Civ.P. 81(e). Specifically, Rule 81(e) converts the terms "recoupment" to "compulsory counterclaim," and "set-off" to "permissive counterclaim." Additionally, Rule 13 set out the scopes of those counterclaims and the extent to which they may be barred by applicable statutes of limitations.
Rule 13 provides in pertinent part:
"(a) Compulsory Counterclaims. A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim....
"(b) Permissive Counterclaims. A pleading may state as a counterclaim any *471 claim against an opposing party not arising out of the transaction or occurrence that is the subject matter of the opposing party's claim.
"(c) Counterclaim Exceeding Opposing Claim. A counterclaim may or may not diminish or defeat the recovery sought by the opposing party. It may claim relief exceeding in amount or different in kind from that sought in the pleading of the opposing party. All counterclaims other than those maturing or acquired after pleading shall relate back to the time the original plaintiff's claim arose."
The adoption of the Civil Rules in 1973 was closely followed by the general recodification of Alabama statutes in the 1975 Code, which became effective in 1977. The 1975 Code significantly altered the terminology of Ala. Code 1940 (Recomp.1958), Tit. 7, § 352 (set-off), § 355 (relation back), and § 357 (affirmative recoupment). Those sections were replaced by Ala.Code 1975, §§ 6-8-85, -84, and -86, respectively, which provided:
"§ 6-8-85. Judgment for defendant Permissive counterclaims.

"If the debt or demand permissively counterclaimed exceeds the amount of the plaintiff's demand, the amount of such excess being found by the jury or court trying the same, judgment must be entered against the plaintiff for costs and in favor of the defendant for such excess, and where there is more than one defendant and the debt or demand permissively counterclaimed belongs to only one defendant, then judgment for such excess must be entered in favor of such defendant for such excess."
"§ 6-8-86. Judgment for defendant Compulsory counterclaims.

"On a compulsory counterclaim, if the claim or demand of the defendant equals the claim or demand of the plaintiff, judgment must be entered for the defendant; if the claim or demand of the defendant exceeds the claim or demand of the plaintiff and the plaintiff is the party liable to its satisfaction, judgment must be entered against him in favor of the defendant for such excess and all costs."
"§ 6-8-84. Effect of statute of limitations.

"When the defendant pleads a counterclaim to the plaintiff's demand, to which the plaintiff replies the statute of limitations, the defendant is nevertheless entitled to his counterclaim, where it was a legal subsisting claim at the time the right of action accrued to the plaintiff on the claim in the action."
(Emphasis in original.) Obviously, these sections replaced the traditional terminology "set-off" and "recoupment"with the "modern" terminology used in the Rules. Thus, while §§ 352 and 357 of Tit. 7, Ala.Code 1940 (Recomp.1958), spoke of "set-off" and "recoupment," respectively, Ala.Code 1975, §§ 6-8-85 and -86 speak of "permissive counterclaims" and "compulsory counterclaims," respectively. The most significant change, however, was the substitution of the term "counterclaim" in § 6-8-84 for the term "set-off" in its predecessor section.
Against this historical background, we are compelled to disagree with the analysis and conclusions expressed in Sharp Electronics Corp. v. Shaw, 524 So.2d 586 (Ala. 1987), regarding the efficacy of statute-of-limitations defenses to compulsory counterclaims. First, we disagree with the implications in the statement that "[r]elation back doctrines became necessary when statutes altered common law rules and allowed affirmative recoveries under counterclaims." Shaw, 524 So.2d at 590 n. 2. This assertion is inconsistent with the statutory history of set-off, which, as we have already discussed, authorized affirmative recoveries as early as 1799. The first relation-back provision, the predecessor of § 6-8-84, did not appear until 1867. More significantly, the relation-back provision, by its express terms, applied only to set-off. Indeed, it enlarged defendants' opportunities to interpose pleas of set-off, Dunham Lumber Co. v. Holt, 124 Ala. 181, 185, 27 So. 556, 558 (1900). It did not, as suggested in Shaw, narrow defendants' *472 opportunities to interpose pleas of recoupment.
Second, we cannot conclude, as did Shaw, that "[t]he original version of § 6-8-84 was enacted to give relation-back effect to setoff in addition to recoupment." Shaw, 524 So.2d at 590 (emphasis added). This statement necessarily implies that the first affirmative-recoupment provision predated the first relation-back provision. As we discussed above, the statutes were enacted in the opposite sequence.
Most significantly, however, we disagree with the conclusion that § 6-8-84, which "replaced the term `setoff' with `counterclaim' (i.e., all counterclaims, compulsory and permissive)," Shaw, 524 So.2d at 590, brought compulsory counterclaims within its scope, thereby modifying the indestructibility-of-recoupment rule so as to prevent an affirmative recovery on an untimely compulsory counterclaim. To be sure, Ala.R.Civ.P. 13(c) states: "All counterclaims other than those maturing or acquired after pleading shall relate back to the time the original plaintiff's claim arose." (Emphasis added.) However, this Rule, which was adopted in 1973, was drafted "to harmonize with" Ala.Code 1940 (Recomp.1958), Tit. 7, § 355, the predecessor of § 6-8-84. Rule 13(c) committee comments. Of course, § 355 applied by its terms only to pleas of set-off, that is, to permissive counterclaims.
Moreover, when Rule 13(c) was adopted it was by no means settled in Alabama that defendants could not affirmatively recover on an untimely compulsory counterclaim. Indeed, post-1973 case law is replete with opinions unqualifiedly stating that compulsory counterclaims are not subject to statute of limitations defenses. See, e.g., Snow v. Baldwin, 491 So.2d 900 (Ala.1986); Vincent v. F. Hood Craddock Mem. Clinic, 482 So.2d 270 (Ala.1985); Turner v. Lassiter, 484 So.2d 378 (Ala.1985); Safeco Ins. Co. of America v. Sims, 435 So.2d 1219 (Ala.1983) (Jones, J., concurring); Ex parte Fletcher, 429 So.2d 1041 (Ala.1982); Cooper v. Reaves, 365 So.2d 670 (Ala.1978); Campbell v. Regal Typewriter Co., 341 So.2d 120 (Ala.1976), holding modified, Sharp Electronics Corp. v. Shaw, 524 So.2d 586 (Ala.1987); Adams v. Coblentz G.M.C. Truck Sales, 506 So.2d 1023 (Ala.Civ. App.1987). A comparison of the terminology of Rule 13(c) with that of § 6-8-84drafted just two years laterconvinces us that the legislature, in substituting the term "counterclaim" for "set-off," merely harmonized § 6-8-84 with Rule 13(c), which, we conclude, does not refer to compulsory counterclaims. Thus, we now hold, in accordance with the dicta in Conner v. Smith, 88 Ala. 300, 7 So. 150 (1889), that a defendant may recover on a compulsory counterclaim an amount exceeding the amount claimed or recovered on the original claim, regardless of whether the counterclaim would have been barred by the statute of limitations when the original cause of action accrued.
The rationale for treating compulsory counterclaims and permissive counterclaims differently in this respect was aptly explained in Allie v. Ionata, 503 So.2d 1237, 1239 (Fla. 1987) (adopting a rule "permit[ting] the recovery of an affirmative judgment in recoupment when the statute of limitations would bar the desired relief as an independent cause of action"). The court explained:
"The expiration of a statute of limitation does not resolve the underlying merits of the consequently barred claim in favor of either party; it merely cuts off the remedy of the party who has slept on his rights. See Hoagland v. Railway Express Agency, 75 So.2d 822, 827 (Fla.1954). See also Osmundsen v. Todd Pacific Shipyard, 755 F.2d 730, 733 (9th Cir.1985). Limitation statutes are designed as shields to protect defendants against unreasonable delays in filing law suits and to prevent unexpected enforcement of stale claims. Nardone v. Reynolds, 333 So.2d 25, 36 (Fla.1976); Foremost Properties, Inc. v. Gladman, 100 So.2d 669, 672 (Fla. 1st DCA 1958)....
"Such statutes protect defendants against claims asserted when all proper vouchers and evidence are lost and after the facts have become obscure from the lapse of time, defective memory or death and removal of witnesses. Whaley v. Wotring, 225 So.2d 177, 181 (Fla. 1st DCA 1969). It is the recognition of the inapplicability of these purposes which has led courts to develop the rule that one may *473 raise as a defense [emphasis in Allie] a claim which would otherwise be barred by the statute of limitations. See Beekner v. L.P. Kaufman, Inc.[, 145 Fla. 152, 198 So. 794 (1940)]; Payne v. Nicholson[, 100 Fla. 1459, 131 So. 324 (1930)]. A party who seeks affirmative relief, whether through an original complaint or a counterclaim, effectively asserts that he is prepared to prosecute all aspects of that matter. Having sufficient knowledge of the facts to support a complaint and sufficient evidence to prosecute that complaint, he must be prepared to defend against any affirmative defenses arising therefrom. Thus, once a party files an affirmative action, he cannot thereafter profess to be surprised by or prejudiced by affirmative defenses or compulsory counterclaims that stem from that action. The same rationale which permits the defense of recoupment at all on a claim which would be barred by the statute of limitations supports the recovery of affirmative relief. We can perceive no logical reason to prohibit an affirmative judgment in such cases."
Allie, 503 So.2d at 1239-40 (emphasis added).
In our view, this reasoning sufficiently answers any arguments in favor of affording a limited statute of limitations defense to compulsory counterclaims, such as was adopted in Shaw. Consequently, to the extent that Shaw holds that recovery under an untimely compulsory counterclaim is limited to the amount of the claim, Shaw is overruled, and we hold that Ala.Code 1975, § 6-2-34(9), does not bar the counterclaim seeking recovery of sewer tap fees in this case. The trial court's judgment, to the extent that it held the counterclaim to be barred by § 6-2-34(9), is reversed and the cause is remanded for further proceedings.
Consistent with the foregoing discussion, the rules regarding permissive and compulsory counterclaims on which the limitations period has expired when the claimant's cause of action accrued may be stated as follows:
(1) Compulsory counterclaims for money damages are not subject to statutes of limitations and permit recoveries in excess of the amount of the claim.
(2) Because of the preceding rule, Ala. Code 1975, § 6-8-84, and Ala.R.Civ.P. 13(c) apply only to permissive counterclaims.
(3) A permissive counterclaim is subject to the statute of limitations defense, and, therefore, allows no recovery.

III. Attorney Fees
The trial court also awarded Gulf View attorney fees and costs. "`The general rule in Alabama and most other jurisdictions is that attorneys' fees are not recoverable as damages, in the absence of a contractual or statutory duty, and a few other exceptions on equitable principles.' George E. Jensen Contractor, Inc. v. Quality Mill Works, Inc., 431 So.2d 1232, 1234 (Ala.1983). Highlands Underwriters Insurance v. Eleganté Inns, Inc., 361 So.2d 1060 (Ala.1978); State v. Alabama Public Service Commission, 293 Ala. 553, 307 So.2d 521 (1975)." Porter v. Hook, 554 So.2d 382, 386 (Ala.1989).
The contract did not provide for an award of attorney fees; therefore, the trial court had no authority to award attorney fees on the basis of the contract.
Gulf View's claim sought injunctive relief and a declaratory judgment. However, Alabama's Declaratory Judgments Act, § 6-6-220 et seq., Ala.Code 1975, does not authorize the award of attorney fees. Wiregrass Electric Cooperative v. City of Dothan, 621 So.2d 969, 971 n. 2 (Ala.1993). Nor do the injunction statutes, § 6-6-500 et seq., provide for such an award. Therefore, the trial court had no statutory authority to award attorney fees.
In certain circumstances equity authorizes an award of attorney fees, most notably where an attorney's efforts have resulted in the creation of a common fund from which the attorney may be paid. Hart v. Jackson, 607 So.2d 161 (Ala.1992); City of Ozark v. Trawick, 604 So.2d 360 (Ala.1992); Mitchell v. Huntsville Hosp., 598 So.2d 1358 (Ala.1992); Blankenship v. City of Hoover, 590 So.2d 245 (Ala.1991). This is not such a case; therefore, the trial court's award of attorney fees to Gulf View is reversed.
*474 In summary, that portion of the judgment addressed in Part I of this opinion is affirmed as modified and interpreted therein; that portion of the judgment addressed in Part II is reversed; that portion addressed in Part III is reversed; and the cause is remanded.
APPLICATION GRANTED; ORIGINAL OPINION WITHDRAWN; OPINION SUBSTITUTED; AFFIRMED IN PART AS MODIFIED AND INTERPRETED; REVERSED IN PART; AND REMANDED.
HORNSBY, C.J., and SHORES, KENNEDY, INGRAM and COOK, JJ., concur.
HOUSTON, J., concurs in part; dissents in part.
HOUSTON, Justice (concurring in part and dissenting in part).
I concur in parts I and III of the majority opinion. I dissent as to part II.
The counterclaim filed by Interim and Romar was not in the nature of recoupment. See Sharp Electronics Corp. v. Shaw, 524 So.2d 586 (Ala.1987). Gulf View and Midtown sued to enforce an easement. Interim and Romar counterclaimed for damages for breach of contract, alleging a failure to pay for sewer connections. True, the counterclaim filed by Interim and Romar did arise out of the same contract that created the easement in favor of Gulf View and Midtown; therefore, the counterclaim should, as the majority holds, be characterized as compulsory under Rule 13(a), Ala.R.Civ.P. However, not all compulsory counterclaims are in the nature of recoupment. Recoupment is of common law origin and is a right, defensive in nature, resting with the defendant to reduce the plaintiff's claim for money damages dollar for dollar. This right exists as long as the plaintiff's cause of action exists. Sharp, supra; see, also, 20 Am.Jur.2d Counterclaim, Recoupment, etc., §§ 1-22 (1965). A plea of recoupment, by definition, falls within the Rule 13(a) definition of a compulsory counterclaim, just as a plea of set-off, by definition, falls within the definition of a permissive counterclaim found in Rule 13(b). Rule 13(c) makes it very clear that a compulsory counterclaim need not always be in the nature of recoupment:
"(c) A counterclaim may or may not diminish or defeat the recovery sought by the opposing party. It may claim relief exceeding in amount or different in kind from that sought in the pleading of the opposing party. All counterclaims other than those maturing or acquired after pleading shall relate back to the time the original plaintiff's claim arose."
(Emphasis added.) Interim and Romar sought relief (damages) different in kind from that sought by Gulf View and Midtown. Gulf View and Midtown sought an injunction to enforce an easement; Interim and Romar sought damages for breach of contract. Theoretically, both sets of parties could have gotten exactly what they wanted. Such is not the nature of recoupment.
The law, as I understand it, is that a counterclaim, whether compulsory or permissive, relates back to the time the original plaintiff's claim arose if the counterclaim was a legally subsisting claim at the time the plaintiff's cause of action accrued, unless it is one that matured or was acquired after the original pleading or is one in the nature of recoupment. In Sharp, this Court explained:
"At common law, a defendant could not have an offensive recovery on his recoupment claim. The defendant's recoupment recovery could not exceed plaintiff's recovery; defendant could use any recovery only up to the amount of plaintiff's recovery. In effect, recoupment was only an affirmative defense, and statute of limitations issues would not arise. Relation back doctrines became necessary when statutes altered common law rules and allowed affirmative recoveries under counterclaims."
524 So.2d at 590 n. 2. I can find no logical basis in the case law of this state for concluding that the common law "indestructibility of recoupment" doctrine should be applied to compulsory counterclaims, offensive in nature (and, thus, not in the nature of recoupment), filed pursuant to Ala.Code 1975, § 6-8-86. As this Court explained in Sharp, our cases have not clearly explained the rules *475 governing the relation back of counterclaims. The cases cited by the majority as "unqualifiedly stating that compulsory counterclaims are not subject to statute of limitations defenses," 644 So.2d at 472 (emphasis in original), are among those cases that this Court in Sharp had in mind when it took the opportunity "to set the record straight" with respect to the rules governing the relation back of counterclaims. 524 So.2d at 590.
In the present case, agents of Interim blocked the easement on October 16, 1992; thus, Gulf View and Midtown had a cause of action as of that date to enjoin interference with the easement. The counterclaim alleged a breach of contract (failure to pay for sewer connections) occurring in 1984. Neither Interim nor Romar had a "legal subsisting claim" as of October 16, 1992, approximately eight years after they say the breach of contract occurred.
Because I would follow, not overrule, Sharp, and because I believe that the counterclaim was barred by the applicable statute of limitations, I would affirm the judgment and overrule the application for rehearing.
NOTES
[1] These documents are recorded in Miscellaneous Book 53, p. 1744 et seq., and at Miscellaneous Book 67, p. 0319 et seq., and copies of them accompanied the pleadings and evidence produced in this case. Brief of Appellees, at 3-4.
[2] The order did not determine the question of who should bear the cost of repairing Loop Road; therefore, that question is not before this Court.
[3] The applicable statute of limitations, Ala.Code 1975, § 6-2-34(9), allows six years to file an action for breach of a contract. It is undisputed that the sewer taps were provided on or before March 15, 1986, pursuant to Paragraph C of the March 15 contract.
[4] We are aware of the absence of privity de jure between Interim and Romar on the one hand and Gulf View on the other. However, principles of equity reject a rule that would allow one party to enforce provisions of a contract while, at the same time, forbidding the other party to enforce provisions of the same contract. There is privity de aequitate.
[5] In characterizing the counterclaim as "compulsory," the Court stated: "[T]here can be no dispute that if Shaw had not filed his claim concerning the [photocopier model] SF 726 as a counterclaim to Sharp's action, he would have been forever barred from making that claim, because it arose out of a transaction to which plaintiff's complaint related." Shaw, 524 So.2d at 589.